_____ FILED   _____ ENTERED
_____ LODGED   _____ RECEIVED

The Honorable Robert S. Lasnik

**OCT 30 2018**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

DEVAUGHN WOODS,

Defendant.

NO. CR18- 254RSL

**PLEA AGREEMENT**

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, Andrew C. Friedman and Francis Franze-Nakamura, Assistant United States Attorneys for said District, and Anthony Teelucksingh, Trial Attorney with the U.S. Department of Justice Computer Crime & Intellectual Property Section, and DEVAUGHN WOODS, and his attorney, Scott J. Engelhard, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A):

1.    **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

2.    **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter pleas of guilty to the following charges contained in the Information.

PLEA AGREEMENT/WOODS - CR18-254RSL - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.      Conspiracy, as charged in Count 1, in violation of Title 18, United States Code, Section 371;

b.      Conspiracy to Commit Money Laundering, as charged in Count 2, in violation of Title 18, United States Code, Section 1956(h).

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document.  Defendant further understands that, before entering his guilty pleas, he will be placed under oath.  Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3.      **Element of the Offenses.**  The elements of the offenses to which Defendant is pleading guilty are as follows:

a.      The elements of Conspiracy, as charged in Count 1, in violation of Title 18, United States Code, Section 371, are as follows:

First, beginning in or about April 2012 and ending in our about September 2017, there was an agreement between two or more persons to commit a crime;

Second, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act.

The conspiracy alleged is a conspiracy to commit Wire Fraud and Computer Fraud and Abuse.

The elements of Wire Fraud are as follows:

First, the Defendant knowingly devised a scheme or plan to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence or were capable of influencing a person to part with money or property;

Third, the Defendant acted with intent to defraud; that is the intent to deceive or cheat; and

PLEA AGREEMENT/WOODS - CR18-254RSL - 2

1    Fourth, the Defendant transmitted or caused to be transmitted a wire in interstate

2    or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

3    The elements of Computer Fraud and Abuse are as follows:

4    First, the Defendant knowingly caused the transmission of a program, code,

5    command, or information to a computer without authorization;

6    Second, as a result of the transmission, the Defendant intentionally impaired the

7    integrity or availability of data, a program, a system, or information;

8    Third, the computer was used in or affected interstate or foreign commerce or

9    communication; and

10    Fourth, during any one-year period, the loss was at least $5,000, or 10 or more

11    computers were affected.

12    b.    The elements of Conspiracy to Commit Money Laundering, as charged in

13    Count 2, in violation of Title 18, United States Code, Section 1956(h), are as follows:

14    First, beginning in or about October 2013 and ending in our about September

15    2017, there was an agreement between two or more persons to commit the crime of

16    money laundering; and

17    Second, the Defendant became a member of the conspiracy knowing of its object

18    and intending to help accomplish it.

19    The elements of Money Laundering are as follows:

20    First, the Defendant conducted a financial transaction that involved the proceeds

21    of wire fraud or computer fraud and abuse;

22    Second, the Defendant knew that the money represented the proceeds of wire

23    fraud or computer fraud and abuse; and

24    Third, the Defendant knew that the transaction was designed in whole or in part to

25    conceal or disguise the nature or source of the proceeds of the wire fraud or computer

26    fraud and abuse.

27    4.    **The Penalties**. Defendant understands that the statutory penalties

28    applicable to the offenses to which he is pleading guilty are as follows:

PLEA AGREEMENT/WOODS - CR18-254RSL - 3

1    a.    For the offense of Conspiracy, as charged in Count 1:  a maximum

2  term of imprisonment of up to five years, a fine of up to $250,000, a period of

3  supervision following release from prison of up to three years, and a mandatory special

4  assessment of  $100 dollars.  If a probationary sentence is imposed, the probation period

5  can be for up to five (5) years.  Defendant agrees that the special assessment shall be paid

6  at or before the time of sentencing.

7    b.    For the offense of Conspiracy to Commit Money Laundering, as

8  charged in Count 2:  a maximum term of imprisonment of up to twenty years, a fine of up

9  to $500,000 or twice the amount of money involved in the conspiracy, whichever is

10  greater, a period of supervision following release from prison of up to three years, and a

11  mandatory special assessment of $100 dollars.  If a probationary sentence is imposed, the

12  probation period can be for up to five (5) years.  Defendant agrees that the special

13  assessment shall be paid at or before the time of sentencing.

14    Defendant understands that supervised release is a period of time following

15  imprisonment during which he will be subject to certain restrictive conditions and

16  requirements.  Defendant further understands that, if supervised release is imposed and he

17  violates one or more of the conditions or requirements, Defendant could be returned to

18  prison for all or part of the term of supervised release that was originally imposed.  This

19  could result in Defendant's serving a total term of imprisonment greater than the statutory

20  maximum stated above.

21    Defendant understands that, as a part of any sentence, in addition to any term of

22  imprisonment and/or fine that is imposed, the Court may order Defendant to pay

23  restitution to any victim of the offenses, as required by law.  Defendant further

24  understands that the consequences of pleading guilty may include the forfeiture of certain

25  property, either as a part of the sentence imposed by the Court, or as a result of civil

26  judicial or administrative process.

27

28

PLEA AGREEMENT/WOODS - CR18-254RSL - 4

1    Defendant agrees that any monetary penalty the Court imposes, including the

2    special assessment, fine, costs, or restitution, is due and payable immediately and further

3    agrees to submit a completed Financial Statement of Debtor form as requested by the

4    United States Attorney's Office.

5        5.      **Rights Waived by Pleading Guilty.**  Defendant understands that by

6    pleading guilty, he knowingly and voluntarily waives the following rights:

7            a.      The right to plead not guilty and to persist in a plea of not guilty;

8            b.      The right to a speedy and public trial before a jury of his peers;

9            c.      The right to the effective assistance of counsel at trial, including, if

10                   Defendant could not afford an attorney, the right to have the Court

11                   appoint one for him;

12           d.      The right to be presumed innocent until guilt has been established

13                   beyond a reasonable doubt at trial;

14           e.      The right to confront and cross-examine witnesses against Defendant

15                   at trial;

16           f.      The right to compel or subpoena witnesses to appear on his behalf at

17                   trial;

18           g.      The right to testify or to remain silent at trial, at which trial such

19                   silence could not be used against Defendant; and

20           h.      The right to appeal a finding of guilt or any pretrial rulings.

21       6.      **Ultimate Sentence.**  Defendant acknowledges that no one has promised or

22   guaranteed what sentence the Court will impose.

23       7.      **Restitution.**  The parties agree that they will recommend that the Court

24   apportion liability for restitution owed to AT&T Mobility between Defendant and the

25   defendants charged in related cases.  Defendant agrees to pay restitution in the

26   apportioned amount of $155,032.46 (which shall <u>not</u> be joint and several with any other

27   defendant).  Said restitution shall be due and payable immediately and shall be paid in

28

PLEA AGREEMENT/WOODS - CR18-254RSL - 5

1 | accordance with a schedule of payments as proposed by the United States Probation

2 | Office and ordered by the Court

3 |        8.      **Forfeiture of Assets.**  Defendant understands that the forfeiture of property

4 | is part of the sentence that must be imposed in this case.  Defendant agrees to forfeit to

5 | the United States immediately all of her right, title, and interest in any and all property,

6 | real or personal, that constitutes or is derived from proceeds traceable to the charge of

7 | Conspiracy to which he is pleading guilty.  All such property is forfeitable pursuant to

8 | Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section

9 | 2461(c), Title 18, United States Code, Section 982(a)(2)(B),  and Title 18, United States

10 | Code, Section 1030(i), and includes, but is not limited to:

11 |        a.      a sum of money in the amount of $155,032.46, representing a

12 | portion of the proceeds the Defendant obtained from the offenses.  The Defendant

13 | understands and acknowledges this forfeited sum of money is separate and distinct from

14 | the restitution that is ordered in this case.

15 |      Defendant agrees to fully assist the United States in the forfeiture of this property

16 | and to take whatever steps are necessary to pass clear title to the United States, including

17 | but not limited to: surrendering title and executing any documents necessary to effect

18 | forfeiture; assisting in bringing any property located outside the United States within the

19 | jurisdiction of the United States; and taking whatever steps are necessary to ensure that

20 | property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made

21 | unavailable for forfeiture. Defendant agrees not to file a claim to any such property in any

22 | federal forfeiture proceeding, administrative or judicial, that may be initiated.

23 |      The United States reserves its right to proceed against any remaining property not

24 | identified in this Plea Agreement, including any property in which Defendant has any

25 | interest or control, if that property constitutes or is traceable to proceeds of the

26 | Conspiracy.

27 |        9.      **Statement of Facts.**  The parties agree on the following facts.  Defendant

28 | admits he is guilty of the charged offenses:

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2  For approximately 10 years, until September 2017, Defendant was an employee of AT&T.  Defendant worked at

3  AT&T's Customer Care telephone call center located in Bothell, Washington as a customer service representative.  As

4  a customer service representative, Defendant had credentials to log into both a workstation and a variety of proprietary

5  programs on that workstation that AT&T used to conduct

6  business.  Defendant understood that his computer was used in or affected interstate or foreign commerce or

7  communication.  Defendant received training at AT&T on

8  network security.  As a result, Defendant knew that his login credentials were for his use only, and that AT&T would

9  assume that only Defendant was using his login credentials to

10  access his workstation and the programs on that workstation.

11

12  One of the programs on Defendant's workstation was a program through which Defendant could "unlock" phones for

13  eligible AT&T customers.  Unlocking a phone allows the

14  phone to be used on the cellular networks of other service providers.  Defendant's job duties required him to be familiar

15  with the products and services offered by AT&T.  As a result,

16  Defendant knew that AT&T offered to sell phones either at a discount or under an installment plan if the customer agreed

17  to enter into a long-term service contract with AT&T.

18

19  As part of Defendant's job duties at AT&T, Defendant unlocked phones when customers met certain criteria set by

20  AT&T.  Based on the training Defendant received at AT&T,

21  Defendant understood that he was not authorized to unlock phones when those criteria had not been met.  Defendant

22  further understood that every time he used Defendant's

23  network credentials to submit an unlocking request, he was representing to AT&T that he had reviewed the eligibility

24  criteria and had determined that the customer in question

25  satisfied that criteria.  Defendant also understood that unlocking a phone when the eligibility criteria were not

26  satisfied could cause harm to AT&T by depriving it of future

27  payments from the customer if that customer chose to leave AT&T's cellular network.

28

PLEA AGREEMENT/WOODS - CR18-254RSL - 7

1
2
3
4

Sometime in 2012 or 2013, K.E. and M.S., who also worked at AT&T's call center in Bothell, recruited Defendant to help unlock cell phones by downloading a computer program onto his computer. K.E. and M.S. put Defendant into touch with a man named "Frankie."

5
6
7
8
9
10
11
12
13

"Frankie" instructed Defendant to set up a dedicated email account to communicate with him. Defendant used the accounts dwoodslxxxv@gmail.com and thomasdean1991@yahoo.com to communicate with "Frankie." "Frankie" used multiple email accounts to communicate with Defendant, including unlockoutlet@ymail.com and jackbower764@gmail.com. Defendant also communicated with "Frankie" by text message and by phone. Defendant understands that "Frankie" lived outside the United States; as a result, most or all of "Frankie's" emails and text messages travelled from outside the United States to the State of Washington.

14
15
16
17
18
19

"Frankie" instructed Defendant on how to install malware on AT&T's protected network. Defendant installed the malware, used the malware to capture and export information about AT&T's computer network and the programs used on the network. Shortly after Defendant started working for "Frankie," AT&T discovered that K.E. and M.S. were conducting illegal unlocks and both individuals left the company.

20
21
22
23
24
25
26
27
28

Defendant did not work with "Frankie" again until "Frankie" contacted Defendant sometime in September or October of 2014 and directed Defendant to assist with gaining access to AT&T's protected network. According to Defendant, "Frankie" threatened Defendant directly, and through an intermediary, that there would be consequences if Defendant did not assist "Frankie." After Defendant agreed to assist "Frankie," "Frankie" explained that he would send Defendant hardware devices to install on AT&T's computer network. Defendant understood that these devices would allow "Frankie" to obtain access to AT&T's computer network, steal information from AT&T, and unlock cell phones.

PLEA AGREEMENT/WOODS - CR18-254RSL - 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

From late 2014 to the end of the scheme in 2017, "Frankie" sent Defendant a variety of hardware devices including wireless hotspots, routers, routers with built-in hotspots, and USB "keys." Defendant knew that he was not authorized to plug these devices into AT&T's protected computer system. However, at "Frankie's" direction, Defendant attached some of these devices to AT&T's computer network to give "Frankie" access. "Frankie" would send Defendant text messages telling Defendant when to plug the router into the network and when to unplug it. Defendant understood that these hardware devices were designed to use his credentials and the credentials of other AT&T customer service representatives to fraudulently submit unlocking requests for ineligible customers.

The USB devices served a different function than the routers and hotspots. Namely, these devices were designed to steal the network credentials of other customer service representatives at the call center. At "Frankie's" instruction, Defendant would plug the USB devices into the back of the workstations of customer service representatives when they were not at work. "Frankie" told Defendant by phone that the USB devices were "key-grabbers" that would capture login credentials typed into the customer service representatives' keyboards. Defendant plugged the key-grabbers into the computers of over twenty customer service representatives.

Defendant continued to assist "Frankie" until August 31, 2017 when he was approached by AT&T investigators who had discovered his involvement in the fraudulent unlocking scheme.

"Frankie," paid Defendant for his assistance with illegally unlocking cell phones at AT&T. For example, in November 13, 2014, "Frankie" wired Defendant $948 by Western Union. Subsequently, cash payments were received by Defendant. On at least twelve occasions, Defendant directed a family member to fly to Houston, Texas, in order to receive the payments due from "Frankie" from a man whose name Defendant claims he never knew. The amounts of the

PLEA AGREEMENT/WOODS - CR18-254RSL - 9

payments varied.  Defendant understood that the payments were received in cash due to the need to conceal the illegitimate nature of the scheme.  Defendant concealed the cash proceeds in various locations including a sock in his residence and a safe deposit box.  In total, Defendant received at least $200,000 for his participation in the scheme.  Law enforcement seized $45,000.00 of proceeds from Defendant's residence and safe deposit box.  Subsequently, the government forfeited the funds and remitted $44,967.54 ($45,000.00 less administrative costs) to AT&T.

Defendant understands that more than 10 AT&T computers were affected, and that, although AT&T estimates that its losses are in the tens of millions of dollars (but still is working to calculate its losses), AT&T unquestionably suffered more than $5,000 in losses.

The parties agree that the Court may consider for the purpose of sentencing additional facts contained in the Presentence Report, subject to objections by the parties, as well as any facts presented by either party at sentencing.

10.     **United States Sentencing Guidelines**.  Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in

PLEA AGREEMENT/WOODS - CR18-254RSL - 10

similar conduct who have similar records.  Accordingly, Defendant understands and

acknowledges that:

   a.       The Court will determine applicable Defendant's Sentencing

Guidelines range at the time of sentencing;

   b.       After consideration of the Sentencing Guidelines and the factors in

18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the

maximum term authorized by law;

   c.       The Court is not bound by any recommendation regarding the

sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

range offered by the parties or the United States Probation Department, or by any

stipulations or agreements between the parties in this Plea Agreement; and

   d.       Defendant may not withdraw his guilty pleas solely because of the

sentence imposed by the Court.

   11.    **Acceptance of Responsibility.**  At sentencing, *if* the district court

concludes Defendant qualifies for a downward adjustment acceptance for acceptance of

responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or

greater, the United States will make the motion necessary to permit the district court to

decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b),

because Defendant has assisted the United States by timely notifying the United States of

his intention to plead guilty, thereby permitting the United States to avoid preparing for

trial and permitting the Court to allocate its resources efficiently.

   12.    **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement,

the United States Attorney's Office for the Western District of Washington and the

Computer Crime & Intellectual Property Section of the United States Department of

Justice agree not to prosecute Defendant for any additional offenses known to the

government as of the time of this Agreement that are based upon evidence in its

possession at this time, and that arise out of the conduct giving rise to this investigation.

In this regard, Defendant recognizes the United States has agreed not to prosecute all of

PLEA AGREEMENT/WOODS - CR18-254RSL - 11

1  the criminal charges the evidence establishes were committed by Defendant solely

2  because of the promises made by Defendant in this Agreement.  Defendant agrees,

3  however, that for purposes of preparing the Presentence Report, the United States

4  Attorney's Office will provide the United States Probation Office with evidence of all

5  conduct committed by Defendant.

6      Defendant agrees that any charges to be dismissed before or at the time of

7  sentencing, and any other potential charges that were discussed but were not filed, were

8  substantially justified in light of the evidence available to the United States, were not

9  vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for

10  any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

11      13.     **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that, if

12  Defendant breaches this Plea Agreement, the United States may withdraw from this Plea

13  Agreement and Defendant may be prosecuted for all offenses for which the United States

14  has evidence.  Defendant agrees not to oppose any steps taken by the United States to

15  nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

16  Agreement.  Defendant also agrees that if Defendant is in breach of this Plea Agreement,

17  Defendant has waived any objection to the re-institution of any charges in the Indictment

18  that were previously dismissed or any additional charges that had not been prosecuted.

19      Defendant further understands that if, after the date of this Plea Agreement,

20  Defendant should engage in illegal conduct, or conduct that violates any conditions of

21  release or the conditions of his confinement, (examples of which include, but are not

22  limited to, obstruction of justice, failure to appear for a court proceeding, criminal

23  conduct while pending sentencing, and false statements to law enforcement agents, the

24  Pretrial Services Officer, Probation Officer, or Court), the United States is free under this

25  Plea Agreement to file additional charges against Defendant or to seek a sentence that

26  takes such conduct into consideration by requesting the Court to apply additional

27  adjustments or enhancements in its Sentencing Guidelines calculations in order to

28  increase the applicable advisory Guidelines range, and/or by seeking an upward departure

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  or variance from the calculated advisory Guidelines range.  Under these circumstances,

2  the United States is free to seek such adjustments, enhancements, departures, and/or

3  variances even if otherwise precluded by the terms of the plea agreement.

4       14.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

5  Defendant acknowledges that by entering the guilty pleas required by this Plea

6  Agreement, Defendant waives all rights to appeal from his conviction and any pretrial

7  rulings of the court.  Defendant further agrees that, provided the court imposes a custodial

8  sentence that is within or below the Sentencing Guidelines range (or the statutory

9  mandatory minimum, if greater than the Guidelines range) as determined by the court at

10 the time of sentencing, Defendant waives to the full extent of the law:

11      a.    Any right conferred by Title 18, United States Code, Section 3742,

12 to challenge, on direct appeal, the sentence imposed by the court, including any fine,

13 restitution order, probation or supervised release conditions, or forfeiture order (if

14 applicable); and

15      b.    Any right to bring a collateral attack against the conviction and

16 sentence, including any restitution order imposed, except as it may relate to the

17 effectiveness of legal representation; and

18      This waiver does not preclude Defendant from bringing an appropriate motion

19 pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the

20 decisions of the Bureau of Prisons regarding the execution of his sentence.

21      If Defendant breaches this Plea Agreement at any time by appealing or collaterally

22 attacking (except as to effectiveness of legal representation) the conviction or sentence in

23 any way, the United States may prosecute Defendant for any counts, including those with

24 mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

25 Agreement.

26      15.    **Voluntariness of Plea.**  Defendant agrees that he has entered into this Plea

27 Agreement freely and voluntarily and that no threats or promises, other than the promises

28

PLEA AGREEMENT/WOODS - CR18-254RSL - 13

1  contained in this Plea Agreement, were made to induce Defendant to enter his pleas of

2  guilty.

3       16.     **Statute of Limitations.**  In the event this Agreement is not accepted by the

4  Court for any reason, or Defendant has breached any of the terms of this Plea Agreement,

5  the statute of limitations shall be deemed to have been tolled from the date of the Plea

6  Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea

7  Agreement by the Court; or (2) thirty (30) days following the date on which a breach of

8  the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

9

10

11  //

12

13

14

15  //

16

17

18

19  //

20

21

22  //

23

24

25

26  //

27

28

PLEA AGREEMENT/WOODS - CR18-254RSL - 14

17.    **Completeness of Agreement**.  The United States and Defendant agree that, except as to certain matters set forth during the plea colloquy in open Court, these terms constitute the entire Plea Agreement between the parties.  This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington and the Computer Crime & Intellectual Property Section of the United States Department of Justice.  It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

DATED:  this 30th day of October, 2018.

DEVAUGHN WOODS
Defendant

SCOTT J. ENGELHARD
Attorney for Defendant

ANDREW C. FRIEDMAN
Assistant United States Attorney

FRANCIS FRANZE-NAKAMURA
Assistant United States Attorney

ANTHONY TEELUCKSINGH
Trial Attorney
Computer Crime & Intellectual Property
Section, U.S. Department of Justice